2026 IL App (1st) 261460-U

No. 1-26-1460

First Division
August 10, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ARTHUR PARIS, GREGORY VAUGHAN, MILAGROS RUIZ, PETER VERNON, MICHAEL JAKSICH, JAMES LACHOWICZ, MICHAEL JOSEPH, JAMES MERCURIO, MIKE CHMIELEWSKI, JOHN SELEP, KEN JURCZYK, 3614 WILTON, INC., STEVEN SACHNOFF, MAUREEN O'DONNELL, JIM SPENCER, and LUZ ARROYO, | ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | No. 26 CH 6973 |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | |
| CHICAGO TRANSIT AUTHORITY, and SP PLUS, LLC, | ) ) ) | Honorable |
| | ) | Thomas M. Donnelly |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Entry of a temporary restraining order is affirmed where the circuit court did not abuse its discretion in granting injunctive relief.

¶ 2    This interlocutory appeal concerns a dispute over the use of certain parcels of land beneath elevated "L" tracks near Wrigley Field in Chicago. Defendant the Chicago Transit Authority (CTA) holds title to the land. Plaintiffs are various individuals who own property near the elevated tracks who alleged that they or their predecessors in interest have used the land beneath the tracks for more than 20 years. On July 28, 2026, the circuit court granted plaintiffs' motion for a temporary restraining order (TRO) preventing the CTA from towing any vehicles or removing any structures from the disputed land for 10 days. The CTA now appeals, arguing that the TRO should be reversed because plaintiffs did not establish a fair question that they (1) had protectible property rights in the disputed land, (2) had a likelihood of success on the merits, and (3) lacked an adequate legal remedy and would suffer irreparable harm without injunctive relief. The CTA also contends that the TRO is "overbroad" because it applies to unidentified structures and all vehicles on the disputed land without sufficient particularity. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4    Plaintiffs are 16 owners and residents of land near elevated "L" tracks by Wrigley Field. According to plaintiffs, they have either owned or leased certain areas of their land beneath the tracks as parking spaces, primarily for Chicago Cubs games. In June 2026, the CTA sent letters to plaintiffs informing them that it was "prohibited to park vehicles or store any other structures or materials" under the "L" tracks without the CTA's permission. The letters instructed plaintiffs to "remove all vehicles and other materials" by July 1, 2026, and stated that they contact the CTA about purchasing a parking space on the disputed land for a monthly fee.

¶ 5 In response to an inquiry from plaintiffs' attorney, the CTA then sent another letter asserting that the CTA owned the property beneath the tracks and that plaintiffs had no legal interest to that land. In particular, the letter asserted that plaintiffs could not obtain an interest in the disputed land through adverse possession or other means because the CTA had been using the land for public use. Finally, the letter reiterated that the CTA would begin "clearing out the property underneath the 'L' and removing impermissible vehicles, materials, and private structures there," although the deadline for plaintiffs to remove such things was now extended to August 1, 2026.

¶ 6 On July 21, 2026, plaintiffs filed a verified, three-count complaint in the circuit court. Count I sought injunctive relief on the basis that plaintiffs acquired protectable interests in the disputed land through adverse possession because they "have used continuously, adversely, actually, openly and notoriously, asserted exclusive possession of the [land] under claim of title inconsistent with the ownership of the CTA for more than twenty years." Count I also contended that plaintiffs would suffer irreparable harm and have no adequate legal remedy if the CTA were allowed to tear down existing structures like fences and parking tents and have third-party vehicles park on the disputed land. Finally, count I asserted that plaintiffs had a likelihood of success on the merits because (1) the CTA was authorized to use the disputed land only for the purpose of maintaining the "L" tracks, and (2) a recently-introduced parking ordinance would, if passed, explicitly entitle plaintiffs and their guests to park on the disputed land with the proper permit. Accordingly, plaintiffs sought to enjoin the CTA from towing any vehicles or tearing down fences, tents, or other parking structures on the disputed land.

¶ 7 In count II, plaintiffs requested a declaratory judgment that they had acquired the disputed land via adverse possession, and that the CTA had no interest in the disputed land or right to charge

for parking on the land. Similarly, in count III, plaintiffs sought an order establishing their right to a permanent prescriptive easement "for the purposes of ingress, egress and security provided by their fences," and permanent injunctive relief preventing the CTA from destroying any structures or interfering with plaintiffs' ability to park on the disputed land.

¶ 8 On July 22, 2026, plaintiffs also filed a Verified Emergency Motion for Temporary Restraining Order and Preliminary Injunctions Without Notice pursuant to section 11-101 of the Code of Civil Procedure (735 ILCS 5/11-101 (West 2024)). Plaintiffs argued that the motion was necessary to preserve the status quo and prevent the CTA from executing its threat to begin towing cars and demolishing structures on the disputed land. The motion recognized that the CTA held titles to the disputed land but argued that the deeds limited the CTA to using the land only to maintain tracks above, not for the purpose of charging to park vehicles on the land below. Plaintiffs again alleged that they have used and occupied that disputed land exclusively, completely, actually, openly, notoriously, and continuously for at least 20 years and have paid all insurance, taxes, and costs associated with maintaining the land for that time. Plaintiffs' motion further asserted that the third-party parkers the CTA planned to sell permits to would obstruct their own access to their properties and create unwanted noise and garbage to the plaintiffs' detriment.

¶ 9 On July 24, 2026, plaintiffs filed a verified amended complaint raising substantially similar theories against the CTA.

¶ 10 On July 27, 2026, the CTA filed both a combined motion to dismiss plaintiffs' complaint and a response to plaintiffs' emergency motion for a TRO.

¶ 11 Essentially, the CTA argued that plaintiffs had failed to show "Plaintiff-specific facts" establishing an ascertainable right because they did not specify facts such as when each plaintiff acquired his or her respective property, which properties contained which structures that were to

be removed, or when each plaintiff began to adversely possess the disputed the land. The CTA also contended that plaintiffs did not have a likelihood of success where the public use of the disputed land defeated any claims of adverse possession or prescriptive easement. Finally, the CTA maintained that plaintiffs had not shown that they lacked an adequate legal remedy where they did not explain why monetary relief would not adequately compensate them for any wrongful towing or destruction of parking structures, and where the CTA had committed in writing to not hinder plaintiffs' access to their properties.

¶ 12    The circuit court held a hearing on July 27, 2026, at which the parties largely reiterated the arguments contained in their filings. After hearing from the parties, the court struck plaintiffs' amended complaint and gave them four days to replead their allegations. However, the court also granted plaintiffs a TRO enjoining the CTA from towing vehicles or demolishing any structures on the disputed land for a period of 10 days. The court further ordered plaintiffs to place any revenue received from selling parking during that time in escrow.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    We first briefly consider our jurisdiction on appeal. Rule 307(a) provides that an interlocutory appeal may be taken from an order of the circuit court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Under Rule 307(d), a party wishing to appeal the grant or denial of a TRO must file a petition in the appellate court and the circuit court within two days of the order being appealed. Here, the circuit court entered the TRO on July 28, 2026, and the CTA filed its notice of interlocutory appeal in the circuit on July 29, 2026. The CTA then filed its Rule 307(d) petition in this court on July 30, 2026. Thus, we have jurisdiction

to review the petition under Rule 307. *Jefferson v. Chicago Housing Authority*, 2026 IL App (1st) 260279, ¶ 16.

¶ 16    When faced with an interlocutory appeal under Rule 307, we do not decide on the merits of the case or factual disputes, but rather consider only "whether there was a sufficient showing to affirm the order of the trial court granting or denying the relief requested." *Woods v. Patterson Law Firm*, *P.C.*, 381 Ill. App. 3d 989, 993 (2008). Generally, a TRO is intended to temporarily preserve the status quo between the parties until the circuit court can rule on whether to grant a preliminary injunction. *M.D. by Fox v. Momence Community Unified School District 1*, 2026 IL App (3d) 260007, ¶ 10. The status quo is the last actual, peaceable, and uncontested status preceding the pending controversy. *Id.*

¶ 17    To obtain a TRO, the moving party must show a "fair question" that he (1) has an ascertainable and protectible right, (2) has a likelihood of success on the merits, (3) will suffer irreparable harm without a TRO for which he (4) has no adequate remedy at law. *Glass v. Department of Corrections*, 2022 IL App (4th) 220270, ¶ 9. A circuit court's decision whether to grant or deny a TRO will not be overturned on appeal unless the circuit court abused its discretion. *Id.* ¶ 10. An abuse of discretion occurs only where the circuit court's decision is arbitrary, fanciful, or so unreasonable that no rational person would agree with the circuit court's position. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 18    In this case, the CTA primarily argues that plaintiffs did not establish a fair question of their rights to the disputed land because their filings lack "property-specific" allegations necessary for the parties and the courts to determine the precise nature of plaintiffs' possible rights and the scope of any relief. In so arguing, the CTA cites *Capstone Financial Advisors, Inc. v. Plywaczysnki*, 2015 IL App (2d) 150957, ¶¶ 10-14, where the Second District affirmed the denial

of a TRO on the basis that the plaintiff's motion and complaint lacked sufficiently specific facts to establish entitlement to injunctive relief. Although we agree with the general notion that a plaintiff must allege specific and well-pleaded facts to obtain a TRO, we distinguish this case from *Capstone*, where the plaintiff failed to allege "a single well-pled factual allegation that support[ed] granting injunctive relief." *Id.* ¶ 11.

¶ 19    Here, the CTA's letters to plaintiffs and plaintiffs' counsel establish that the disputed land is confined to that "under the [CTA] Red Line between Addison and Grace Street" near Wrigley Field. The plaintiffs' initial and amended complaints also both listed each plaintiff's name and specific address within that area. Exhibit 1 to each complaint provided the "legal description" of the disputed land. Although plaintiffs' filings do not list, for example, exactly which plaintiffs have erected fences or parking structures on their respective pieces of the disputed land, this shortcoming does not affect the CTA or a court's ability to understand the rights claimed by plaintiffs or the scope of any injunctive relief. This is a far cry from the vague claims and mere "inuendo" the relied upon by the plaintiff in *Capstone*. *Id.* Accordingly, we do not find that the circuit court abused its discretion in the present case.

¶ 20    Similarly, we also reject the CTA's assertion that the TRO is "overbroad" because it enjoins the CTA from towing "any cars" or destroying "all" fences, parking tents, or other structures on the disputed land. The CTA contends that the broadly-worded injunction will cause confusion about which vehicles and structures are protected, and goes beyond the status quo to incorporate vehicles or structures that have no connection to plaintiffs or otherwise fail to meet the requirements of adverse possession or prescriptive easement.

¶ 21    Under the Code of Civil Procedure, a TRO must "be specific in terms" and "describe in reasonable detail *** the act or acts sought to be restrained[.]" 735 ILCS 5/11-101 (West 2024).

For the reasons set forth above, we find that the TRO described the scope of relief with reasonable particularly under the circumstances and adequately maintained the status quo. Thus, we find no abuse of discretion in the breadth of the TRO.

¶ 22    The CTA next argues that plaintiffs have not demonstrated a likelihood of success on the merits. Generally, a party asserting adverse possession is required to show that he possessed the disputed property for at least 20 years and that his possession was (1) continuous; (2) hostile; (3) actual; (4) open; notorious, and exclusive; and (5) under claim inconsistent with that of the true owner. *In re Estate of Cargola*, 2017 IL App (1st) 151823, ¶ 18. Similarly, to establish the right to a prescriptive easement, the party seeking the easement must have used the disputed land for at least 20 years in a manner that is continuous, adverse, exclusive, under a claim of right, and with the knowledge of the owner but without the owner's consent. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 32.

¶ 23    Here, the CTA argues that plaintiffs have failed to demonstrate a probability of success on the merits where the disputed land was used for the public use in operation of the "L." It is true that the 20-year period does not begin to run against publicly-owned land that is continuously used for a public purpose. See *Miller v. Metropolitan Water Reclamation District of Greater Chicago*, 374 Ill. App. 3d 188, 190 (2007). However, the fact that the disputed land is publicly owned does not automatically defeat a claim of adverse possession or prescriptive easement. Instead, the doctrine is only a defense where the disputed land is used for a "public use," which courts have explained means it was used for the general benefit of the public. *Wanless v. Wraight*, 202 Ill. App. 3d 750, (1990). 754-55 (village-owned parking lot not for public use).

¶ 24    Although the "L" tracks themselves are very likely used for a public purpose, we agree with plaintiffs that there is at least a fair question whether the land under the tracks, which is more

specifically at issue here, is for a public use. The record suggests that the CTA has not used the land beneath the tracks at all during the past 20 years. Indeed, plaintiffs explicitly allege that they or their predecessors in interest have borne the burden of cleaning up any debris that has fallen from the tracks as a consequence of normal train operation or track maintenance above. Moreover, plaintiffs have also alleged that their possession satisfied the elements of adverse possession and prescriptive easement listed above, in many cases going so far as to erect fences and parking structures on the disputed land. Thus, we find that plaintiffs have shown a fair question of a protectible right and likelihood of success on the merits.

¶ 25 Finally, the CTA contends that the TRO should not have been granted where plaintiffs did not show that they had an inadequate legal remedy or would suffer irreparable harm without injunctive relief. The CTA's argument in this regard is two-fold. First, they note that the circuit court accepted the CTA's written assurances that it would not hinder plaintiffs' access to their property. Second, the CTA maintains that any wrongful towing of vehicles or removal of structures could be adequately remedied by compensatory damages.

¶ 26 To the extent that the CTA argues the TRO was unnecessary because it already agreed not to block plaintiffs' ingress and egress from their homes, we fail to see how the CTA was prejudiced by this aspect of the circuit court's ruling. Regarding the CTA's argument that money damages could rectify any harm to plaintiffs, we find that the CTA takes too narrow a view of irreparable harm or adequate legal remedies. "To show irreparable injury, the plaintiff is not required to show that the injury is beyond repair or compensation in damages, but need show only transgressions of a continuing nature." *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1096 (2007). Additionally, prolonged interruptions in business relationships can cause irremediable harms for which compensation is inadequate. *Id.*

¶ 27　　Here, without injunctive relief, plaintiffs will suffer potentially unwarranted and extensive intrusion onto the property next to their private residences. See *Cameron v. Bartels*, 214 Ill. App. 3d 69, 74-75 (1991) (continuous trespass to real property is irreparable injury). Moreover, the record shows that many of the plaintiffs either park on the disputed land themselves or sell access to the parking space to third parties. As explained in *Stenstrom*, interference with such a business relationship may constitute irreparable harm. For example, plaintiffs' current renters may be forced to find parking elsewhere and may not return even if plaintiffs ultimately succeed in litigation. We also note that the TRO appropriately maintains the parties' economic interests in parking revenue by requiring plaintiffs to place any proceeds in escrow while the litigation is pending. Under such circumstances, we find that the court did not abuse its discretion in granting the TRO.

¶ 28　　　　　　　　　　　　　　　III. CONCLUSION

¶ 29　　For the reasons stated, we affirm the judgment of the circuit court.

¶ 30　　Affirmed.